IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE

FILED

**November 15, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

NAPOLEON MOMON,                    )
                                   )
    Appellant,                     )
                                   )
v.                                 )    No.
E1996-00007-SC-R11-PC
                                   )
STATE OF TENNESSEE,                )
                                   )
    Appellee.                      )

## CONCURRING / DISSENTING OPINION

I concur with the conclusion of the Court that the right to testify is fundamental, and I agree with the procedural protections that the Court now requires to ensure a valid waiver of that right. However, because I am unable to reconcile the majority's characterization of the right to testify as being fundamental and personal to the defendant with the majority's conclusion that the right is subject to harmless error analysis, I dissent.

The majority has researched and traced the right of a criminal defendant to speak in his or her own behalf at trial with thoughtfulness and careful attention. As the majority recognizes, this right has been recognized in Tennessee in one form or another since the very beginning of statehood, and as far back as 1796, the common law prohibition on a defendant's right to speak at trial has found no sanctuary in our criminal jurisprudence. The right to testify has also achieved fundamental status under federal law, and the majority quotes Rock v. Arkansas, 483 U.S. 44, 51 (1987), as stating that the right to testify "is one of the rights that are essential to due process of law in a fair adversary process." The meticulous and painstaking research of both state and federal law undertaken by the majority exposes the truth of these propositions.

To conclude its thorough analysis of the fundamental nature of the right to testify, the Court correctly states that "it is beyond serious dispute that the right [of a

1

criminal defendant to testify] has achieved fundamental status under the state and federal constitutions." It is with some wonder, then, that the majority holds that the right to testify is not so fundamental as to defy harmless error analysis.

At one time, Tennessee courts regularly held that violations of constitutional rights could never constitute harmless error. See Briggs v. State, 207 Tenn. 253, 338 S.W.2d 265 (1960). Following Briggs, however, the United States Supreme Court in Chapman v. California, 386 U.S. 18, 24 (1967), held that most constitutional errors were subject to harmless error analysis so long as the error was found to be harmless beyond a reasonable doubt. Indeed, as this Court has declared, "in modern jurisprudence, there is a presumption that harmless error should be applied." State v. Williams, 977 S.W.2d 101, 105 (Tenn. 1998).

This presumption of harmless error analysis has never been conclusive, however, and some constitutional rights are so fundamental that their violation is never subject to harmless error analysis. The majority today adopts the federal harmless error analysis formulated by Chief Justice Rehnquist in Arizona v. Fulminante, 499 U.S. 279 (1991), to hold that the right to testify is subject to harmless error. In Fulminante, the Court fashioned a curious dichotomy between those errors "occurri[ing] during the presentation of the case to the jury," id. at 307, and those "affecting the framework within which the trial proceeds rather than simply an error in the trial process itself." Id. at 310. Only the rights falling into the latter category are beyond the reach of harmless error analysis. Among the rights listed by the court whose infringement constitutes a structural defect is the right to self-representation at trial. Id.; see also McKaskle v. Wiggins, 465 U.S. 168, 177 (1984) With its citation to McKaskle v. Wiggins, the Supreme Court reaffirmed that "the right to speak for oneself entails more than the opportunity to add one's voice to the cacophony of others." McKaskle, 465 U.S. at 177. The McKaskle Court acknowledged that a denial of the right to speak for one's self implicates concerns beyond the mere presentation of evidence to a jury; the ability to exercise of the right of self-representation "affirm[s] the

2

dignity and autonomy of the accused and [allows] the presentation of what may, at least occasionally, be the accused's best possible defense." Id.

I believe this same rationale is even more true with respect to a defendant's right to testify. The right to testify is, after all, an integral part of the defendant's right to conduct a defense, and like the right of self representation, the right to testify also affirms the dignity and autonomy of the accused. In fact, as the United States Supreme Court has declared, "[e]ven more fundamental to a personal defense than the right of self-representation . . . *is an accused's right to present his own version of events in his own words.* A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." Rock, 483 U.S. at 52 (emphasis added).

A careful review of the majority's harmless error analysis reveals the conspicuous absence of any adequate answer to most essential question in this debate: If denial of the right of self-representation is not subject to harmless error analysis, how can this Court then insist that denial of the more fundamental right of a defendant to testify is somehow less worthy of protection? It is bewildering that the majority would devote several pages to establishing the fundamental nature of the right to testify only to later deny its fundamental nature when asked to provide for a rule of automatic reversal.[1] Until the majority is able to provide an answer to why

[1] The majority says that I have fundamentally misperceived the nature of the harmless error doctrine as constituting a protection of constitutional rights. To be sure, I do not believe that the harmless error doctrine provides any genuine protection for the right to testify.

In fact, application of the harmless error doctrine allows the erosion of the right to testify because it permits courts to overlook or ignore deprivations of the right under certain circumstances. Under the harmless error doctrine, the significance of the right to testify depends entirely upon the amount of prejudice suffered by the defendant. In its most basic sense, no prejudice equals no right to testify.

A rule of automatic reversal, however, affords real protection for the right to testify because it ensures a new trial for a defendant who has been deprived the exercise of this fundamental right. Therefore, when I speak of the majority affording less protection for the right to testify by applying the doctrine of harmless error, I mean that the majority has chosen to provide less protection for the denial of the right than it would have if the majority had chosen to provide for automatic reversal.

3

deprivation of the more fundamental right is not deserving of automatic reversal—and I suspect they can not—I must respectfully dissent.[2]

In support of its view that denial of the right to testify is subject to harmless error analysis, the majority relies in part on case law from other jurisdictions. As the majority states, "The vast majority of jurisdictions which have considered this issue have held that harmless error analysis applies when a defendant establishes a denial of the right to testify under the Fifth Amendment or that the prejudice prong of Strickland v. Washington, 466 U.S. 668 (1984)[,] must be established if the defendant is to prove ineffective assistance of counsel . . . ." While I agree that such cases exist, I question the propriety of the specific cases cited by the majority to support its conclusion that a denial of the right to testify is subject to harmless error analysis under Tennessee law.

Of the nine cases cited by the majority opinion for the proposition that denial of the right to testify is subject to harmless error analysis, six of these cases analyze the issue following a Sixth Amendment ineffective assistance of counsel approach.[3] The jurisdictions adopting a Sixth Amendment approach generally believe that the diligence of trial counsel is the best protection for the right to testify. Therefore, according to this approach, it ineluctably follows that a claim of ineffective assistance of counsel would be the proper remedy.

In this case, however, the Court has refused to decide the Sixth Amendment claim as originally presented by the parties. Instead, the majority has chosen to afford

---

[2] I do not mean to imply that this court should somehow engage in the dubious enterprise of "ranking" constitutional rights in order of importance. I mean only that the United States Supreme Court has stated that the fundamental right of a criminal defendant to testify at trial is "[e]ven more fundamental" than the right of self-representation. See Rock, 483 U.S. at 52. This having been said, I can see no reason why the "[e]ven more fundamental" right should not be afforded the protection of automatic reversal.

[3] See United States v. Tavares, 100 F.3d 995, 999 (D.C. Cir. 1996); Commissioner of Correction v. Rodriguez, 610 A.2d 631, 636 n.9 (Conn. 1992), overruled on procedural grounds, Simms v. Warden, 640 A.2d 601 (Conn. 1994); State v. Paulsen, 726 A.2d 902, 907 (N.H. 1999); State v. Arguelles, 921 P.2d 439, 441 (Utah 1996); State v. Flynn, 527 N.W.2d 343 (Wis. Ct. App. 1994); State v. Robinson, 982 P.2d 590 (Wash. 1999).

4

relief based upon the text of Article I, section 9 of the Tennessee Constitution and the Fifth Amendment to the federal constitution. Further, the majority has adopted a procedure by which the court—and not trial counsel—is required to ensure a valid waiver of the right to testify.[4] By adopting such a procedure, the Court has rejected the notion that trial counsel alone is in the best position to the protect the right to testify. As such, I believe that reliance on Sixth Amendment cases is questionable at best, and such authority should not be considered in concluding that the right to testify is subject to harmless error under the Tennessee Constitution.[5]

The three remaining cases cited by the majority for the proposition that a denial of the right to testify is subject to harmless error analysis do follow a Fifth Amendment approach.[6] These cases primarily rely upon the approach articulated in Ortega v. O'Leary, 843 F.2d 258 (7th Cir. 1988),[7] which essentially analyzes a denial of the right to testify from the perspective of a denial of the right to present other witness testimony. Fully in accord with Ortega, the majority proposes a multi-factored test to determine the harmfulness of a denial of the right to testify. As evidenced by the four enumerated factors, the majority apparently believes that the testimony of a defendant is no more important than that of any other defense witness.[8]

---

[4] Although the procedure adopted by the majority does call for trial counsel to voir dire the defendant, the trial court nevertheless is the final arbiter of whether a valid waiver has been made. When there is evidence that a valid waiver has not been made, the trial court "is obliged to question the defendant directly to the extent necessary to ensure a valid waiver."

[5] I wish to reiterate that I am in full agreement with the majority that a Sixth Amendment right to counsel analysis is improper in right to testify cases. Nevertheless, I believe the majority's reliance on Sixth Amendment cases to support harmless error analysis under either the Tennessee Constitution or the Fifth Amendment is intellectually suspect.

[6] See People v. Johnson, 72 Cal. Rptr. 2d 805, 820 (Cal. Ct. App. 1998); State v. Silva, 890 P.2d 702, 712 (Haw. Ct. App. 1995), overruled on other grounds, Tachibana v. State, 900 P.2d 1293 (Haw. 1995); People v. Solomon, 560 N.W.2d 651, 654-56 (Mich. Ct. App. 1996).

[7] These two cases relying on Ortega are State v. Silva and People v. Solomon. The California Court of Appeals found harmless error in People v. Johnson without relying on Ortega. However, the attorney in Johnson denied his client the right to testify because he believed that his client was going to present perjured testimony. Because there is no fundamental right to present perjured testimony, the holding in Johnson does not seem to support the majority's conclusion that the right to testify generally is subject to harmless error.

[8] The fundamental misconception here is that the defendant is not merely another witness for the defense. "In fact, the most important witness for the defense in many criminal cases is the defendant himself." Rock, 483 U.S. at 52.

5

The majority states that in some cases, "the defendant's testimony would have no impact, or even a negative impact, on the result of trial." The Court also states that in other cases, "denial of the defendant's right to testify may be devastating to the defense. However, under such circumstances, a reviewing court "*will simply conclude that the error was not harmless beyond a reasonable doubt.*" (emphasis added).

With all due respect to the majority, I fail to see how in most cases a reviewing court could conclude that a defendant's omitted testimony is "devastating to the defense." The appellant's own case is an excellent example of how the majority's test fails to properly account for the harmfulness of the error. For example, the appellant's testimony in the second trial would have been cumulative because his version of events was already presented to the jury through his prior statements made to police and those given in depositions. The State was able to present expert proof that the shooting was not the result of a struggle because the shot was fired more than three feet away, and the defendant's testimony was not strictly needed since the defense strategy was simply to put the State to its burden of proving the offense beyond a reasonable doubt.[9] Using this Court's own test, most courts would probably consider denial of the defendant's right to testify in the second trial harmless beyond a reasonable doubt.

One of the criticisms of harmless error analysis generally is that appellate courts are ill-equipped to judge the actual harm resulting from a denial of a constitutional right. The appellant's case is unique, though, because it affords a reviewing court the opportunity to actually observe the harm by comparing the results of *two* trials whose only substantial and material difference is the lack of the appellant's testimony. When the appellant testified in the first trial, he received an acquittal on the charge of first degree murder, and the jury was unable to reach a verdict on the lesser charge of second degree murder. However, when the appellant

---

[9] In fact, the defense did not offer any witnesses at the second trial.

did not testify at the second trial, the jury was able to reach a verdict. I do not discount the reality that no two juries are ever the same, but one could certainly argue that given the results of the first trial, the failure of the appellant to testify in the second trial certainly lead to his conviction of second degree murder.

If a reviewing court can conclude that denial of the right to testify in the second trial was harmful in this case, it will no doubt *only* be because the court has the benefit of a different result in a second trial. I suspect that in most cases, neither this Court nor any other court will likely have the benefit of comparing the outcomes of two different trials whose only substantial and material difference is the defendant's failure to testify. Without the benefit of the first trial, it would not strain logic to conclude that denial of the appellant's right to testify in the second trial was harmless beyond a reasonable doubt. As such, the application of the Court's multi-factor test may amount to protection of a fundamental right only when the defendant has been fortuitously tried twice and can demonstrate different outcomes.[10] The application of such a test amounts to no more protection than one could expect from a paper tiger, and this fundamental right deserves the protection of automatic reversal.

I profoundly disagree that a denial of the right to testify is merely a "trial error" involving only the presentation of evidence to a jury. In so holding, this Court has ignored that the evidentiary value of the defendant's testimony is not the only concern involved when examining the harm incurred by a denial of the right to testify. The right to testify is part of the larger right of a defendant to present a defense, and it is often the only opportunity that a defendant has to present his or her version of events to the jury.[11] As has been said of the right to testify:

---

[10] The majority says that I have overlooked the fact that a defendant in a post-conviction hearing will be able to offer what his testimony would have been. Such an approach would have offered this appellant no relief, however, because his version of events was presented to the jury in the form of statements made to police and statements made in a civil deposition. The jury at the second trial did not get the opportunity to judge firsthand the credibility of the defendant or to observe how his testimony would have withstood cross-examination. Although we can never know for sure, I would be willing to risk a new trial on the premise that these factors, among others, contributed to the result in the first trial.

[11] The importance of this opportunity can not be overestimated. "Speech is power: speech is to persuade, to convert, to compel. It is to bring another out of his bad sense into your good sense." See Ralph Waldo Emerson, Letters and Social Aims (1876).

7

> [The right to testify] is embraced in the right of the defendant to meet and deny the accusation against him and to present evidence in his behalf, including himself as a witness. The decision whether defendant will testify is a choice between mere passivity at trial and active participation through which the defendant can inject his own acts, voice and personality into the process. Taking the stand is the defendant's opportunity, if he wants it, to face his accusers and the jury, tell his story, submit to examination, and exercise such ability as he may have to persuade those who will make a decision that may vitally affect his life. And the witness box gives the defendant a forum to speak to a world larger than the courtroom. Considerations such as these make the right to testify fundamental to the fairness, the dignity and the vitality of the twentieth century judicial process.

See Wright v. Estelle, 572 F.2d 1071, 1081 (5th Cir. 1978) (Godbold, J., dissenting) (citation omitted). As I have tried to show, the actual and inherent worth of a defendant's testimony consists of much more than its evidentiary value alone.

Although I am concerned with the majority's application of harmless error analysis to a denial of the right to testify, I am also concerned that this Court needs to develop a consistent approach to decide which fundamental rights defy harmless error analysis. Today, the majority holds that denial of the right to testify is subject to harmless error analysis because it constitutes a "trial error," and therefore, the Court seems to fully adopt the federal harmless error standard under Arizona v. Fulminante. Previously, however, this Court has recognized rights that defy harmless error analysis based upon express recognition in our constitution and statutes without regard to the Fulminante distinction between "trial errors" and "structural defects."

In State v. Lowe, 811 S.W.2d 526, 527 (Tenn. 1991), we addressed the issue of whether a denial of a defendant's statutory right to a continuance after the State files an untimely notice of its intent to seek an enhanced sentence "is absolute, or rather is subject to harmless error analysis." Although we had never previously stated that denial of that right prejudices the judicial system as a whole, we nevertheless held that harmless error analysis did not apply because "the right is absolute." These findings were made simply upon the plain language of a statute guaranteeing the right, the language of the Rules of Criminal Procedure, and the Advisory Committee comments to the Rules of Criminal Procedure. Similarly, in State v. Muse, 967

8

S.W.2d 764, 768 (Tenn. 1998), we adopted a "defies harmless error analysis" with respect to a defendant's right to be present at jury selection. In <u>Muse</u>, our conclusion was derived simply from our belief that the state constitution and statutes elevated this right to fundamental status in Tennessee, incapable of harmless error analysis. <u>See</u> 967 S.W.2d at 766, 768.

As the majority plainly concedes, the right of a defendant to testify at his or her own trial is guaranteed not only by the state constitution, but also by statutes, prior case law, and current practice. Even if a denial of the right to testify is generally held to a harmless error analysis under the federal standard, prior precedent from this Court all but compels a contrary finding according to state law. As the majority recognizes with its citation to <u>Rock v. Arkansas</u>, the denial of the right to testify strikes at the very heart of fairness in the system of criminal justice. It is incongruous, therefore, to deny that such an error prejudices the system as a whole. I would hold that a unilateral deprivation by defense counsel of the defendant's right to testify can not constitute harmless error under either the state or the federal constitutions. Consequently, I respectfully dissent from that part of the majority opinion subjecting to harmless error analysis the right of a criminal defendant to testify.

I am authorized to state that Justice Birch joins in this concurring/dissenting opinion.

_____
WILLIAM M. BARKER, JUSTICE